UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                               Case No. 2:14-cr-20282

v.                                        HONORABLE STEPHEN J. MURPHY, III

D-1, ALEXANDROS YFANTIDIS,

    Defendant.
                                       /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE
PLEA AND SENTENCING [34] AND SANCTIONING THE GOVERNMENT**

Defendant Alexandros Yfantidis pleaded guilty to mail fraud, in violation of 28 U.S.C. § 1341. ECF 18. He now moves to set aside his plea and the resultant sentence on the grounds that his attorney coerced him into entering the agreement. For the reasons below, the Court will deny the motion.

**BACKGROUND**

Yfantidis operated a laundry business out of a building in Warren, Michigan. On May 4, 2011, someone uncoupled gas pipes in the building and lit a candle, resulting in the building's explosion and widespread damage to the surrounding neighborhood. Yfantidis filed an insurance claim on the building, eventually securing $236,633.84 from the insurer. He was later indicted on six counts: (1) arson, (2) mail fraud, (3) use of fire to commit a federal felony, (4) bank fraud, (5) obstruction of justice, and (6) bankruptcy fraud.

On January 12, 2015, Yfantidis signed a plea agreement with the Government in which he agreed to plead guilty to count two (mail fraud) and the Government agreed to dismiss the remaining five counts. ECF 18. The agreement stated that there were "no

sentencing guideline disputes" and that Yfantidis's guideline range was 63 to 78 months. *Id.* at PgID 51. The agreement made no mention of probation.

The next month, Yfantidis appeared for his plea hearing. The Court questioned him directly about his age, birthplace, schooling, health, and whether he understood the Court's questions. Plea Hr'g Tr., ECF 37, 5:2–7:12. He answered each question directly. At one point, his lawyer interjected:

> THE COURT: Okay. I take it you read and write English pretty well?
>
> DEFENDANT YFANTIDIS: I can -- I cannot write very well or -- I understand but I cannot --
>
> THE COURT: Okay.
>
> MR. STEINGOLD: He understands fully, Your Honor. He doesn't express himself as well as he understands.
>
> THE COURT: Okay.
>
> MR. STEINGOLD: But he certainly understands everything the Court is saying.
>
> THE COURT: Okay. You understand what I'm saying, you can get through the case and the materials with the assistance of your lawyer, correct?
>
> DEFENDANT YFANTIDIS: Correct, Your Honor.

*Id.* at 5:15–6:3.

> After the preliminary questions to Yfantidis, the Court explained that:
>
> The possible maximum penalty for a person who's convicted of Mail Fraud is 20 years in prison. You could also be fined as much as $250,000. There's a special assessment of a hundred dollars you must pay per count, each count you're convicted of, and by pleading guilty, you expose yourself to those maximum penalties. Even though it's not likely you'll get them in this case, you realize those are the maximums that you expose yourself to here, correct?

*Id.* at 11:20–12:3. Yfantidis replied in the affirmative. *Id.* at 12:4.

2

Five months later, counsel for Yfantidis filed his sentencing memorandum. Consistent with the plea agreement, the memorandum noted that the guidelines called for incarceration, but requested a downward departure and "suggested that alternate forms of punishment such as home confinement would be equally efficient and less costly than incarceration." ECF 20, PgID 72–73.

At the sentencing, counsel for Yfantidis made a final request to the Court for a non-custodial sentence. Sentencing Tr., ECF 32, 12:2–25. The Court recognized Yfantidis's special circumstances, and ultimately granted a 19-month downward variance, but determined that a custodial sentence was necessary. *Id.* at 19:22–23:7.

Yfantidis now argues that he was coerced into pleading guilty. He claims that his attorney at the time, David Steingold, told him "that in every question regarding his plea that he merely say 'yes', 'yes sir', or 'yes your honor', regardless of his innocence." ECF 34, PgID 147. He also claims "Steingold threatened [him] to the effect that if he did not plead guilty to the charge of mail fraud and accept the plea bargain, that he would withdraw from the case and that he was unwilling to represent the Defendant at trial." *Id.* Finally, he claims that Steingold gave him "verbal assurances that he would be sentenced to probation and not prison" and but for those assurances, he "would have never pled guilty[.]" *Id.* at 147–48.

## DISCUSSION

Pursuant to 28 U.S.C. § 2255(a), a person sentenced by a federal court may move to vacate, set aside, or correct the sentence if "the sentence was imposed in violation of the Constitution or laws of the United States." When, as here, the defendant alleges ineffective assistance of counsel arising out of the plea process, the Supreme Court's two-part standard from *Strickland v. Washington* applies. *Hill v. Lockhart*, 474 U.S. 52, 58

3

(1985). Under that standard, the defendant must show "(1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense." *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *4 (E.D. Mich. Sept. 30, 2015) (citing *Strickland v. Washington*, 406 U.S. 668, 687 (1984)). To satisfy the "deficient" requirement, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (1985).

As an initial matter, Yfantidis has not provided evidence that the language barrier prevented him from understanding and willingly entering his plea. Although he argues that "Steingold should have requested an interpreter" because that "would have clarified the plea greatly," ECF 34, PgID 151, the record demonstrates that Yfantidis understood English well enough to comprehend the contents of his plea agreement and the Court's questions. Yfantidis operated at least one[1] business in Michigan for many years. He concedes that he "has a fairly good understanding of English," *id.*, and he was able to specifically answer the Court's questions during the plea hearing. *See, e.g.*, ECF 37, 6:23–7:9 (Yfantidis explaining that he takes a diabetes medication). Finally, the Court specifically told Yfantidis that "if you need anything, legal advice, interpretation, explanation, you want to meet with your lawyer privately, tell me that and you'll get that opportunity as well, okay?" ECF 37, 6:14–17. The claim that he did not understand English well enough to willingly enter the plea agreement

---

[1] Yfantidis's sentencing memorandum suggests he also operated a restaurant, in addition to his laundry business. ECF 20, PgID 70.

and plead guilty is not credible. *Cf. United States v. Vega*, No. CR. 02-20486-01-M1, 2006 WL 1699530, at *7 (W.D. Tenn. June 15, 2006) (finding that the defendant's answers during the plea hearing confirmed that he understood even without an interpreter).

Yfantidis claims Steingold threatened to withdraw his representation if Yfantidis did not plead guilty. In support, he offers only the affidavit of his son, George, who claims that in December 2014, Yfantidis told George that Steingold had told him that "he would withdraw if [Yfantidis] didn't plead guilty." ECF 34-1, PgID 156. George also claims that he "called Mr. Steingold and he confirmed that he had said this to [Yftantidis]." *Id.* But Steingold's alleged statements are hearsay, and no exception to the Federal Rules of Evidence's prohibition on hearsay applies. *See* Fed. R. Evid. 702–705; *see also Arredondo v. United States*, 178 F.3d 778, 782–83 (6th Cir. 1999) (reaching the same conclusion regarding an alleged plea offer overheard by the sister of a trial witness). With nothing more, the Court finds the statement incredible.

Yet even if Steingold actually made the statement, and it was admissible, Yfantidis would not necessarily satisfy the second *Strickland* prong. The Court explained to Yfantidis that he had the right to have an attorney represent him "during all stages of this case, and the Court will appoint an attorney for you if you can't afford one yourself," and Yfantidis confirmed that he understood. ECF 37, 8:2–6. Yfantidis understood that if Steingold ceased to represent him, other counsel would take his place. Because he chose to keep Steingold as his counsel even with that knowledge, he cannot claim that he would not have entered the plea but for Steingold's alleged threat.

Yfantidis also claims Steingold instructed him to "merely say 'yes', 'yes sir', or 'yes your honor', regardless of his innocence" to every question regarding his plea. ECF 34,

5

PgID 147. These statements are also hearsay, but they are also inconsistent with the record. As noted, Yfantidis understood English well enough to comprehend both the plea agreement and the Court's questions. He confirmed, under oath, that the decision to plead guilty was his decision, not his attorney's, ECF 37, 8:22–9:1, that he was not pressured to plea guilty, *id.* at 17:14–18, and that he was in fact guilty of the crime, *id.* at 9:2–6, 19:1–20:4. In short, Yfantidis willingly pled guilty.

Finally, Yfantidis claims that he only pleaded guilty because Steingold gave him "verbal assurances that he would be sentenced to probation and not prison." ECF 34, PgID 147. Again, this is inadmissible hearsay, but Yfantidis's own words and actions belie the claim. Yfantidis signed the plea agreement, which made no mention of probation and stated that there was no dispute that Yfantidis's guideline range was 63 to 78 months. ECF 18, PgID 51. At the plea hearing, the Court twice told Yfantidis that, under the agreement, he could be sentenced to up to 20 years imprisonment and Yfantidis confirmed that he understood. ECF 37, 11:20–12:4, 16:22–17:6.

Yfantidis has not shown, by any admissible evidence, that Steingold's performance was deficient. Accordingly, he has failed to satisfy the first *Strickland* prong; there is therefore no need to evaluate the second prong. The motion will be denied.

One final matter: the Court ordered the Government to respond to Yfantidis's motion by March 1, 2017. ECF 39. The Government failed to file anything. The Court then ordered the Government to show cause by April 14, 2017 why Yfantidis's motion should not be granted "and counsel not sanctioned for failing to follow a written directive of the Court." ECF 40. Again, the Government did not file anything. The motion will be denied for the

reasons stated above, but the Government will nevertheless be sanctioned for brazen failure to follow clear orders of the Court.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion to set aside his plea and sentence [34] is **DENIED**.

**IT IS FURTHER ORDERED** that counsel for the Government is **SANCTIONED** in the amount of $500.00, payable immediately.

**SO ORDERED**.

                               s/Stephen J. Murphy, III
                               STEPHEN J. MURPHY, III
                               United States District Judge

Dated: May 17, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 17, 2017, by electronic and/or ordinary mail.

                               s/David P. Parker
                               Case Manager